THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RODRIGO PATZY<br>10909 Pebble Run Road<br>Silver Spring, MD 20902<br><br>    **Plaintiff,**<br><br>    v.<br><br>**JEFFREY GERRISH**<br>**Chairman and President**<br>**Export Import Bank of the United States**<br>**811 Vermont Avenue NW**<br>**Washington, DC  20571**<br><br>    **Defendant.** | June 5, 2018<br><br><br>Case No.  1:18-cv-01335<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**
**(Employment Discrimination)**

1. Plaintiff Rodrigo Patzy brings this action against Defendant Jeffrey Gerrish in his official capacity as Chairman and President of the Export Import Bank of the United States, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16; and the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*, as amended by the Americans with Disabilities Act of 1990, 42 U.S.C. 12111 *et seq.*

**I. PARTIES**

2. Mr. Patzy is a naturalized citizen of the United States born in Bolivia and residing in the State of Maryland.  Mr. Patzy is a qualified individual with a disability within the meaning of 29 U.S.C. § 794a and 42 U.S.C. § 12102.

3. Jeffrey Gerrish is Chairman and President of the Export Import Bank of the United States, an agency of the federal government within the meaning of 5 U.S.C. §§552a(a)(1) and 552(e), and the official export credit agency of the United States.  The Export Import Bank

helps finance the export of domestic goods and services, thereby promoting employment in the United States.

## II.  JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16( c) (Title VII); and pursuant to the Rehabilitation Act of 1973, as amended, which incorporates the rights, remedies and procedures of Title VII.  29 U.S.C. § 794a(1).

5. Venue lies in this Court pursuant to 28 U.S.C. §1391, in that the acts and omissions alleged took place in the District of Columbia.

6. Mr. Patzy has exhausted his administrative remedies pursuant to 29 C.F.R. §1614.407(b), in that, following a purported investigation of his claims, the Bank rendered a Final Agency Decision dated March 6, 2018, and furnished to Mr. Patzy on March 7, 2018.  Upon information and belief Mr. Patzy alleges the following:

## III.  STATEMENT OF FACTS

7. The Bank has employed Mr. Patzy more than 17 years.  He is a GS-13 Portfolio Manager in the Bank's Trade Credit Insurance (TCI) Division.

8. In March 2016, Mr. Patzy brought suit against the Bank in the U.S. District Court for the District of Columbia to challenge his non–selection for a GS–14 Director position in the TCI Division, on grounds he had been victimized by discrimination on the basis of his sex and national origin. *Patzy v. Hochberg*, Civil Action No. 16-0507 (RMC).  The lawsuit remains pending, and the controversy is both known to, and deeply resented by, management officials in the TCI Division and elsewhere at the Bank.

9.  Mr. Patzy is a disabled veteran of the Nation's military. He has long suffered from neurological problems, a sleep disorder and debilitating migraine headaches, conditions which have prompted his treating physician at the VA Hospital in Washington, D.C. – and the Assistant Chief of Neurology there – to make repeated recommendations that the Bank accommodate Mr. Patzy's service connected disabilities by granting him reassignment to another Division, or at the very least by granting him broader teleworking privileges.

10. The Bank has yet to act on recommendations from Mr. Patzy's physician at the VA that he be afforded reasonable accommodation for disability, recommendations for reasonable accommodation which have also inspired resentment against Mr. Patzy on the part of management officials in the TCI Division and elsewhere at the Bank.

11. Some time in 2013, the Bank issued Mr. Patzy a cell phone, which enabled him to participate in the Bank's telework program. At the time Mr. Patzy and others received the cell phones, they were told that they could use them on an unrestricted basis, and even encouraged to integrate information from their personal phones into the phones issued by the Bank. Mr. Patzy and others proceeded to use the phones in keeping with their understanding of unrestricted terms of use, and did so without incident for a period of several years.

12. However, in February 2017, Mr. Patzy was informed that the Bank's Chief Information Officer had determined that he and other Bank employees had engaged in excessive use of the phones.

13. Mr. Patzy was forced to relinquish his cell phone, and with it, his ability to engage in any telework, though Bank officials who directed confiscation of the phone were well aware that

Mr. Patzy's physician at the VA had specifically recommended telework as a means of accommodating Mr. Patzy's service connected disabilities.  These officials also knew that the alleged excessive use of phone cost the Bank less than eight dollars, which Mr. Patzy made clear he would reimburse.

14. The Bank confiscated the cell phone during a period the TCI Division was relocating to offices that remained under renovation.  A majority of TCI personnel were permitted to telework until the renovation was complete, but Mr. Patzy – whose supervisors were well aware that noise exacerbated his chronic migraines – was required to be on the scene daily, along with a number of construction workers engaged in necessarily noisy work.

15. An employee apparently assigned to examine the cell phone confiscated from Mr. Patzy, told him that it would be possible to use a "toolbox" to attain access to phone's contents.  Thus, when several weeks later after the phone was taken Mr. Patzy was asked for the pin number, the information did not seem especially important.  Mr. Patzy gave over several possibilities from memory, none of which apparently proved successful in opening the phone.  This was as disappointing to Mr. Patzy as anyone else, because, as he told the employee charged with examining the phone, he very much hoped to retrieve copies of photographs taken with the phone.

16. These events culminated in a proposal to suspend Mr. Patzy for a period of three days, which the deciding official upheld in August 2017, despite evidence that others also understood they could use the cell phones on an unrestricted basis, and despite evidence that any alleged "excessive" use had cost the Bank less than eight dollars.

17. The deciding official purported to rely upon an earlier – and bogus – reprimand in Mr. Patzy's file deriving from false and misleading allegations by his supervisor.  Mr. Patzy had decided against challenging the reprimand, through grievance or otherwise, because discussions were impending at the time towards a possible comprehensive settlement of Mr. Patzy's claims against the Bank.

18. Mr. Patzy hoped that foregoing a challenge to the reprimand would be taken as a show of good faith on his part to ease tensions, and so perhaps improve prospects for settlement of a lengthy and contentious controversy.  The hope went unfulfilled, and the bogus reprimand would thus continue to appear in his file for a period of two years, and would also become an alleged additional basis to uphold an equally bogus three day suspension.

19. Female and non-Hispanic employees at the Bank who have engaged in actual misconduct have been subjected to lesser or no discipline.

20. As a direct and proximate result of the foregoing events, Mr. Patzy has suffered economic injury, and the mental distress that is the natural and probable consequence of being disciplined on grounds of sex and national origin, and in order to retaliate against and punish him for opposing discriminatory conduct in formal litigation and administratively, and for seeking reasonable accommodation for service connected disability.

### IV. CLAIMS

#### A.  FIRST CAUSE OF ACTION (TITLE VII)
#### Discrimination Based on Race and National Origin

21. Mr. Patzy adopts and incorporates by reference paragraphs 1 to 20.

22. Mr. Patzy has suffered discrimination based on race and national origin, together with economic injury and the mental distress that is the natural and probable consequence of being victimized by such conduct.

### B.  SECOND CAUSE OF ACTION (TITLE VII)
### Discrimination Based on Gender

23. Mr. Patzy adopts and incorporates by reference paragraphs 1 to 22.

24. Mr. Patzy has suffered discrimination based on gender in violation of Title VII, economic injury and the mental distress that is the natural and probable conduct of being victimized by such conduct.

### C. THIRD CAUSE OF ACTION (TITLE VII)
### Retaliation for Protected EEO Activity

25. Mr. Patzy adopts and incorporates by reference paragraphs 1 to 24.

26. Mr. Patzy has suffered retaliation in the matter of a decision to suspend him for three days in order to punish protected EEO activity, together with economic injury and the mental distress that is the natural and probable consequence of such conduct.

### D. FOURTH CAUSE OF ACTION
### Disability Discrimination - Failure to Accommodate

27. Aldrich adopts and incorporates by reference paragraphs 1 to 26.

28. The Rehabilitation Act prohibits federal agencies from discriminating against an individual with respect to his "compensation, terms, conditions, or privileges of employment" because of disability, and requires agencies to reasonably accommodate disabilities.

29. Mr. Patzy is a qualified individual with a disability within the meaning of the Rehabilitation Act.

30. Mr. Patzy's superiors also perceived him to have a disability within the meaning of the Rehabilitation Act.

31. The Bank has discriminated against Mr. Patzy by denying him reasonable accommodation for disability, as a direct and proximate result of which he has suffered mental distress.

### E.  FIFTH CAUSE OF ACTION
### Disability Discrimination - Retaliation

32. Mr. Patzy adopts and incorporates by reference paragraphs 1 to 31.

33. Defendant subjected Mr. Patzy to an unwarranted suspension in order to retaliate against and punish him for seeking reasonable accommodation for disability, and for objecting to being denied reasonable accommodation, in further violation of the Rehabilitation Act..

34. Mr. Patzy has suffered retaliation, economic injury, and mental distress as a direct and proximate result of the aforesaid conduct.

### RELIEF REQUESTED

**WHEREFORE** Plaintiff Rodrigo Patzy requests judgment against Defendant Jeffrey Gerrish, Chairman and President of the Export Import Bank of the United States, as follows:

  A. Compensatory damages in an amount to be determined at trial.

  B. Back pay and attendant benefits in amounts to be determined at trial.

  C. Reasonable attorneys' fees and costs.

  D. Such other relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff Rodrigo Patzy demands a jury to determine all issues so triable.

Respectfully submitted,

June 5, 2018

**KLIMASKI & ASSOCIATES, P.C.**

　*/s/   **James R. Klimaski***
James R. Klimaski, #243543

　*/s/   **John P. Racin***
John P. Racin, #942003

Klimaski & Associates, P.C.
1717 N Street NW – Suite 2
Washington, DC  20036-2827
202-296-5600         Fax 202-296-5601
Klimaski@Klimaskilaw.com
Racin@Klimaskilaw.com

**Attorneys for Rodrigo Patzy**